**Frank Daryl HOPKINS, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. A–16536.**

Court of Criminal Appeals of Oklahoma.

Jan. 31, 1973.

J. Rex Spurr, Shawnee, for appellant.

Larry Derryberry, Atty. Gen., Yvonne Sparger, Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Presiding Judge:

Appellant, Frank Daryl Hopkins, hereinafter referred to as defendant was charged with the offense of Manslaughter in the First Degree. The defendant was tried before a jury in the District Court of Pottawatomie County, and was convicted on the lesser offense of Negligent Homicide. His punishment was fixed at commitment in the county jail of Pottawatomie County for a period of one (1) year at hard labor on the county roads and payment of a fine of One Thousand Dollars ($1000.00) and costs of the action. From said judgment and sentence, a timely appeal has been perfected to this Court.

Larry Wayne Bowles, Highway Patrolman, testified that he received a call from the Tecumseh Police Department at 7:28 p.m., on May 14, to investigate an accident which had just occurred on Highway 9, within Pottawatomie County. It was still daylight when he arrived at the scene, and the defendant was present. The patrolman found: the total measurements of both lanes of the highway at the scene of the accident was twenty-one feet and nine inches at the point of impact; and the highway had a marked lane divider. The defendant's car was traveling downgrade

in a westerly direction. The decedent's car was traveling easterly on a slight up-grade. Approximately one-tenth of a mile east of the point of impact, there was a warning sign of an approaching inter-section, but the intersection was not vis-ible from the location of the sign, but was visible only when an automobile traveling in a westerly direction crested the hill. This intersection was visible at a distance of approximately 500 feet. The defendant lost control of his car approximately 354 feet east of this intersection after he had traveled over the crest of the hill. Officer Bowles further testified that tire marks were found on the shoulder of the road. At this point, the defendant's car traveled with a wheel off the pavement for 96 feet and then the entire car slid off the pave-ment on to the shoulder, and traveled 185 feet. At this point, the defendant's car went into a side-skid, completely out of control. The vehicle then came back on to the pavement of the road traveling side-ways, 25 feet from the edge of the pave-ment, before striking the deceased's auto-mobile. The point of impact was four and one-half feet south of the center line, in the decedent's easterly lane of traffic. After the point of impact, the defendant's car traveled 165 feet westerly, spinning around one and one-half times. The de-ceased's vehicle traveled 38½ feet in a southeasterly direction, and stopped in a ditch beside the highway.

Officer Bowles, in his expert opinion, estimated that the speed traveled by the de-fendant was approximately 80 miles per hour. Also the officer found two full cans of unopened beer inside the defendant's automobile at the scene of the accident and a third can of beer outside the defendant's automobile. He stated that the defendant was taken to the hospital after the acci-dent, and that he went to the hospital to talk to him and advised him of his rights at that time. He did not detect odor of al-cohol on the defendant at the scene of the accident or later at the hospital, but did de-tect the smell of alcohol inside the defend-ant's automobile. At the hospital, the de-fendant stated he was going to Harrah and was driving approximately 70 miles per hour. The legal speed limit in this area is 65 miles per hour. The officer testified that due to the terrain and warning signs in this particular area where the accident occurred, it was dangerous to be driving even at the posted speed limit. The de-fendant had his right arm in a cast from the elbow down due to an injury received prior to the automobile accident, and stated to Officer Bowles at the hospital, "I'm just almost like one-handed—I just couldn't hold it [referring to his vehicle]." This statement represents the substantial facts available from the record on this appeal.

The defendant raises several propositions of error in his brief on appeal to this Court and those propositions which have been properly presented and supported by competent authority will be discussed in this following Opinion.

■ The defendant asserts error in a proposition alleging that the trial court erred in overruling defendant's demurrer to the Information and motion to dismiss subsequent to the empaneling and swearing of the jury. This proposition is based on the assumption that Manslaughter in the First Degree, 21 O.S.1971, § 711, has been superseded or impliedly repealed by the Oklahoma Negligent Homicide Statute, 47 O.S.1971, § 11–903.

In discussing this proposition it will be necessary to review the significant cases this Court has decided regarding the pro-priety of charging either the offense of First Degree Manslaughter or that of Neg-ligent Homicide. In Ritchie v. Raines, Okl.Cr., 374 P.2d 772 (1962), this Court held that 47 O.S.1971, § 11–903, Negligent Homicide, did not supersede or repeal by implication the provisions of 21 O.S.1971, § 711, First Degree Manslaughter, when the misdemeanor charged, resulting in the death of a person, is operating a motor ve-hicle while under the influence of intoxi-cants. Later, in 1970 this Court held in the case of Atchley v. State, Okl.Cr., 473 P.2d 286 (1970), that the Negligent Homi-

cide Statute was repugnant and inconsistent with Manslaughter Second Degree, and that this statute was impliedly repealed by the latter. Therefore, prosecution for criminal negligence in the operation of an automobile previously brought under Manslaughter Second Degree would now have to be brought under the Negligent Homicide Statute. The Court's intention in this case is clear and it specifically limited the effect of Negligent Homicide to cases previously brought under Second Degree Manslaughter and in no way affected prosecution of cases brought under Manslaughter in the First Degree. Lastly, in 1971, this Court held in White v. State, Okl.Cr., 483 P.2d 751 (1971), that proof of intoxication, beyond a reasonable doubt, takes the offense of homicide, resulting from an automobile accident, out of the definition of "Negligent Homicide" and warrants prosecution of Manslaughter in the First Degree. In this decision, the Court discussed its holding in *Atchley, supra,* and succintly stated that its decision in *Atchley, supra,* was limited to Manslaughter in the Second Degree and that there were instances where a prosecution for Manslaughter in the First Degree resulting in a homicide from an automobile accident would be proper and the charge sufficient to sustain a conviction. The *White, supra,* case, proving a condition of intoxication, is merely one instance of such gross negligence as to remove the offense from negligent homicide and place it within the boundaries of First Degree Manslaughter. The court did not limit its extension of this rule in *White, supra,* but stated that driving while intoxicated was but one of the bases for substantiating a charge of First Degree Manslaughter as opposed to Negligent Homicide.

Since in the present case the defendant was found guilty of Negligent Homicide, the question of whether the actions of the defendant were sufficient to sustain conviction of First Degree Manslaughter is not before this Court. The defendant's proposition improperly presumes that the charge of First Degree Manslaughter in regard to homicides in the negligent operation of an automobile has been repealed. It has not been repealed or superseded. The question now before the court is the sufficiency of the conviction of negligent homicide as a lesser and included offense under the First Degree Manslaughter Statute.

■ In Wilson v. State, 94 Okl.Cr. 189, 237 P.2d 177 (1951), in a vehicular homicide case with similar facts to the present action this Court held:

"The fact the jury found the defendant guilty of manslaughter in the second degree because of his culpable negligence, a lesser and included offense than manslaughter in the first degree, where the evidence is sufficient to support either charge, affords the defendant no ground for just complaint. Such finding under proper instructions would have been permissible if supported by the evidence even in the absence of allegations in the information to support 2nd degree manslaughter. Ray v. State, 86 Okl.Cr. 68, 189 P.2d 620. Moreover in Jackson v. State, 84 Okl.Cr. 138, 179 P.2d 924, 925, we said: 'No prejudice can result to the defendant if convicted of a lower degree of homicide than warranted by the evidence.' "

While, as stated above, we are not considering the question of the sufficiency of First Degree Manslaughter, we do find, however, that the necessary requisites for application of "Negligent Homicide" were sufficiently shown in the Information and positively proven at trial.

Excerpt from Information:

" * * * [T]hat the defendant was then and there driving a 1970 Plymouth Road Runner Automobile in a westerly direction, on State Highway No. 9, 1.5 miles East of Highway No. 177 the same being a public highway in Pottawatomie County, Oklahoma, *in a reckless manner,* and at a *speed greater than was reasonable and proper having due regard for*

*the traffic then and there existing,* * * * ." (Emphasis Added)

Title 47 O.S.1971, § 11–903, in part, states:

"(a) When the death of any person ensues within one year as a proximate result of injury received by the driving of any vehicle in *reckless disregard* of the safety of others, the person so operating such vehicle shall be guilty of negligent homicide." (Emphasis Added)

Sufficient authority is available to support this holding. In Hall v. State, 80 Okl.Cr. 310, 159 P.2d 283 (1945), from the Second Syllabus of the Court, we held:

"Where one is charged with manslaughter in the first degree under statute providing that one who kills a human being while committing a misdemeanor, shall be guilty of manslaughter in the first degree, and facts justify, the defendant may be found guilty of manslaughter in the second degree upon proper instructions, as an included offense."

The Court's Syllabus in Ray v. State, 86 Okl.Cr. 68, 189 P.2d 620 (1948), further held:

"Trial court did not err in submitting issue of manslaughter in the second degree as an included offense, even though information did not allege elements of manslaughter in the second degree where there was evidence from which the jury could reasonably conclude that defendant was guilty of culpable negligence in the operation of his automobile."

See also Mayse v. State, 38 Okl.Cr. 144, 259 P. 277 (1927), and Born v. State, Okl. Cr., 397 P.2d 924 (1964).

While these cases cited refer to the lesser, included offense of Manslaughter Second Degree they are directly in point. The decisions were made previous to the enactment of Title 47 and this Court's holding in *Atchley, supra.* Therefore, the lesser included offense in cases of homicide, in the negligent operation of an automobile, today would be Negligent Homicide, 47 O.S.1971, § 11–903. Since the elements of Negligent Homicide in the instant case were present in the Information charging Manslaughter in the First Degree, it meets the necessary statutory test defined by 22 O.S.1971, § 916:

"The jury may find the defendant guilty of any offense, the commission of which is necessarily included in that which he is charged, or of an attempt to commit the offense."

In light of the overwhelming authority to the contrary, we find the defendant's contention as to the Information and instruction on lesser included offenses to be without merit.

The defendant raises additional propositions of error based on the same premise as his objection to the overruling of his demurrer to the Information. This Court finds the discussion previously stated sufficient to answer defendant's propositions.

■■ Error is also raised, without citation of authority, to the Court's introduction of certain photographic exhibits, which the defendant claims were inflammatory, prejudicial and influenced the jury in rendering a verdict of conviction against him. It is within the discretion of the trial court to rule on the admissibility of evidence at trial and without a showing of severe prejudice to the defendant or breach of his fundamental rights, this Court will not reverse on such grounds. Mott v. State, 94 Okl.Cr. 145, 232 P.2d 166 (1951); Jackson v. State, 67 Okl.Cr. 422, 94 P.2d 851 (1932). As this Court stated in Born v. State, Okl.Cr., 397 P.2d 924 (1964):

"If the principal effect of demonstrative evidence such as photographs is to arouse the passion of the jury and inflame them against the defendant because of the horror of the crime, the evidence must, of course, be excluded. On the other hand, if the evidence has a probative value with respect to a fact in issue that outweighs the danger of prejudice to the defendant, the evidence is admissable [sic], even if it is gruesome and may incidently arouse the passions of the jury."

Lastly, the defendant objects to the judgment and sentence in that the court's pronouncement of continued incarceration on non-payment of fine violates his constitutional rights. Citations by defendant are cases involving indigency and no showing has been made that defendant claims such status. On the contrary, it is found from the record that defendant's bond was paid and that he was represented by retained counsel at trial and on this appeal. If, after completing this one year sentence, defendant feels that he qualifies as an indigent, this cause will be heard. At this time we find the contention without merit.

Therefore, it is the decision of this Court that the judgment and sentence of the District Court be affirmed.

BUSSEY and BRETT, JJ., concur.