**Johnnie Joe SUITOR, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

No. F–79–313.

Court of Criminal Appeals of Oklahoma.

June 4, 1981.

Johnnie Joe Suitor, pro se, Rene P. Henry, Jr., Hominy, for appellant.

Jan Eric Cartwright, Atty. Gen., C. Elaine Alexander, Asst. Atty. Gen., Mark Liddell, Legal Intern, State of Oklahoma, Oklahoma City, for appellee.

OPINION

CORNISH, Judge:

Johnnie Joe Suitor was convicted on two counts of Obtaining Controlled Drugs by Fraud, After Former Conviction of a Felony, in the District Court of Osage County. The evidence was that the appellant went to a pharmacy on two different occasions to have prescriptions filled which were later discovered to be forgeries.

I

The majority of the appellant's arguments are without merit and can be disposed of with brief comments:

A letter from the appellant to a boyfriend was introduced by the prosecutor when he was cross-examining the friend. The appellant says that the letter was intended solely to prejudice the jury, that the use of the letter violated his protection against self-incrimination, and that the letter should have been made known to him under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

He contends that the letter had no probative value regarding any issue properly before the jury, but that is incorrect. The letter was evidence of the relationship between the appellant and the witness, and it was admissible to inform the jury of that relationship so that they could properly weigh the witness's credibility. The letter did not in any way tend to incriminate the defendant in either of the crimes for which he was on trial, thus the self-incrimination argument is frivolous. Nor did it tend to exculpate him; hence *Brady*, supra, is irrelevant.

The appellant asserts that the district court erred in granting the State's motion for joinder of the two cases at trial. Under *Chaney v. State*, 612 P.2d 269 (Okl.Cr.1980), the procedure followed was correct. See also *Sanders v. State*, 612 P.2d 1363 (Okl.Cr. 1980).

Contrary to the appellant's argument, it was proper to prosecute him as a repeat offender. The ten-year limitation on the appellant's prior conviction (see 21 O.S. Supp.1980, § 51 A) expired after the crimes for which the appellant was being tried were committed, but before the trial. *Coats v. State*, 589 P.2d 693 (Okl.Cr.1978) is decisive on this issue.

The appellant challenges the in-court identification by the pharmacist who filled the prescriptions. He is particularly concerned about the photographic identification procedures used by the Tulsa police. We have carefully examined the transcript of the pharmacist's testimony in this regard, and that examination leads this Court to conclude that no impropriety was committed. The appellant also complains about the trial court's refusal to grant his pre-trial lineup, but he concedes that he does not have an unqualified right to one. The question was a discretionary one, and the appellant has not shown an abuse of that discretion.

There is no merit in the appellant's claims that the trial judge should have disqualified himself and that it was error for the district court to hold a hearing on the motion for disqualification. Since the motion for disqualification did not set out specific grounds therefor, the judge would have been justified in denying it outright. Instead, he held a hearing to give the appellant an opportunity to present his specific

grounds. This Court has reviewed the transcript of that hearing. We find no abuse of his discretion in the trial judge's refusal to disqualify.

Because the appellant's requested instructions were not made a part of the record no argument regarding them can be considered.

▪ The State proved the appellant's prior convictions by introducing certified copies of the judgments and sentences. This was an appropriate method of proof under *Louder v. State*, 568 P.2d 344 (Okl.Cr.1977). *Pearce v. State*, 456 P.2d 630 (Okl.Cr.1969), cited by the appellant, applies to out-of-state convictions and is inapplicable.

▪ The trial court acted correctly in denying the appellant's demurrer, motion to dismiss, and motion for a directed verdict of acquittal. The transcript reflects that the State presented a prima facie case, and the factual questions of the identification of the appellant and his knowledge and intent were properly submitted to the jury. *Hunt v. State*, 601 P.2d 464 (Okl.Cr.1979).

The issue of the alleged denial of appeal in one of the appellant's prior convictions has previously been presented to this Court. See *Suitor v. State*, No. PC–79–718 (February 12, 1980). The appeal was not denied; it was waived through the appellant's failure to perfect it. What the district court denied was the appellant's motion to proceed as an indigent, and there is nothing in the record ___ nor has the appellant brought anything more to this Court's attention ___ to indicate that the court's ruling was erroneous.

Regarding the denial of due process through an accumulation of error, see Part II of this opinion, below.

## II

In addition to the above issues, the appellant raises two assignments of error which necessitate some discussion.

### A

▪ The appellant asked a witness to testify to a conversation he had overheard between two other people. He argued that the conversation was admissible hearsay because it consisted of statements against the parties' penal interests. The trial judge sustained the objection on the ground that the statements were not against the witness's penal interests. But the penal interests which matter are those of the declarants who made the hearsay statements, because it is their credibility which is the subject of concern. *Chaney v. State,* supra. If the parties to a conversation make statements against their penal interests, then an uninvolved person who overhears the statements may testify to them.

The State bases its argument against admissibility on 12 O.S.Supp.1980, § 2804. That section is not relevant, however, because the appellant's case was tried before the new evidence code became law.

▪ The trial court's ruling was in error. Nevertheless, a study of the record leads this Court to conclude that the error was harmless. The hearsay evidence was offered to prove that other persons were passing forged prescriptions made out in the appellant's name, while the two prescriptions which were the subjects of this case were presented by the appellant. The first one was presented by him and made out to him; the second one was presented by him and made out to someone else. Thus, the fact that other people were passing prescriptions in his name would be of minimal probative value.

### B

The remaining assignment of error concerns improper conduct of the prosecutor. For instance, in examining the pharmacist who filled the prescriptions, the appellant elicited information that two other people (the same two involved in the hearsay conversation above) had presented twenty or more forged prescriptions to him during the same time span that the appellant was presenting his two. Then, the prosecutor insinuated that the appellant was working in collusion with the other two by making an inference to "this gang."

In his closing argument the prosecutor repeatedly went outside of the record. He made comments about the way "these people in the drug world" work; he stressed

the appellant's homosexual involvement,[1] and told the jury that the appellant's boyfriend was in reality the victim of the appellant's crime. The prosecutor further commented on the length of time actually served in prison in relation to the length of sentence.

█ In reviewing the record in this case, this Court is convinced that any errors made did not influence the jury in their finding of guilt. The jury had to decide three issues: (1) did the appellant present two prescriptions to be filled; (2) were those prescriptions forged; and (3) did the appellant know they were forged. There was strong evidence on each point. We find no basis to reverse that determination of guilt. However, this Court is convinced that the prosecutor intentionally sought to appeal to the jury's emotions instead of confining himself to the evidence in the case. The result of his behavior was a sentence out of proportion to the severity of the crime. For that reason, the sentences of the two cases will be modified to fifteen (15) years, with the two sentences to run consecutively. AFFIRMED AS MODIFIED.

BRETT, P. J., specially concurs.

BUSSEY, J., concurs in part and dissents in part.

BRETT, Presiding Judge, specially concurring:

I concur that the conviction should stand, but I would further modify the sentences by making them run concurrently. As stated in the opinion, "In his closing argument the prosecutor repeatedly went outside of the record." This Court has condemned such conduct of prosecutors many times. In this case the jury was no doubt influenced by the prosecutor's improper conduct. See *Ray v. State*, 510 P.2d 1395 (Okl.Cr. 1973). Therefore, I believe the sentences should be made to run concurrently.

BUSSEY, Judge, concurring in part and dissenting in part:

While I agree that the judgments and sentences should be affirmed, I do not believe that modification is necessary. My examination of the closing arguments of the respective parties leads me to conclude that both counsel for the State and the defense went outside of the record on occasions and were admonished by the court. Objections interposed by both the State and the defense were sustained by the court in most instances. Much of the State's argument now complained of was in response to arguments made by defense counsel, or was based upon evidence admitted during the course of the trial. Objections to other of the arguments complained were sustained and the jury admonished to disregard them.

---

1. It was appropriate for the prosecutor to argue the existence of the relationship insofar as it affected the credibility of the witness, but he emphasized the matter far out of proportion of its relevance.