1998 OK CR 37

**Sidney Allen WORTHEN, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–97–607.**

Court of Criminal Appeals of Oklahoma.

Aug. 11, 1998.

Rehearing Denied Sept. 10, 1998.

---

**3.** Section C, Questions 11 and 26 of form 13.12, *Rules of the Court of Criminal Appeals*, 22 O.S.Supp.1997, Ch. 18, App.

Robert G. Perine, Norman, for Defendant at trial.

R. Richard Sitzman, Ronald E. Christensen, Asst. Dist. Attys., Cleveland County Dist. Atty.'s Office, Norman, for State at trial.

Allen Smith, Appellate Defense Counsel, Norman, for Appellant on appeal.

W.A. Drew Edmondson, Atty. Gen., Jennifer A. Blakeney, Asst. Attys. Gen., Oklahoma City, for Appellee on appeal.

CHAPEL, Presiding Judge.

¶ 1 Sidney Allen Worthen was tried before a court and convicted of Escape from a Penal Institution in violation of 21 O.S.Supp. 1994, § 443(B), in the District Court of Cleveland County, Case No. CRF–93–1738. The Honorable Tom A. Lucas sentenced Worthen to four (4) years imprisonment. Worthen appeals from this Judgment and Sentence.

¶ 2 Worthen raises the following two propositions of error in support of his appeal: [1]

---

1. Worthen also tendered for filing a pro se brief containing six propositions of error. Worthen has not complied with Rule 3.4(E), *Rules of the* *Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App.(1997). We deny his request to file a

I. Worthen's conviction for escape from a penal institution should be reversed because his incarceration was in violation of law; and

II. Worthen's criminal prosecution for escape, following his prison disciplinary sanction arising from the same conduct, violates the Fifth Amendment's double jeopardy prohibition.

¶ 3 After thorough consideration of the entire record before us on appeal including the original record, transcripts, briefs and exhibits of the parties, we find that neither reversal nor modification is required under the law and evidence and affirm. In reaching our decision, we find in Proposition I that the necessary authority was present for Worthen's confinement.[2] However, we take this opportunity to clarify the law regarding the double jeopardy issue raised in Proposition II.

¶ 4 Worthen claims in Proposition II that he cannot be criminally prosecuted for escape after being punished in a prison disciplinary proceeding for the same conduct. The United States Supreme Court recently restated the appropriate double jeopardy analysis in *Hudson v. United States*.[3] While the holding in *Hudson* does not apply here because that case involved civil penalties rather than prison disciplinary sanctions, we apply the Court's reasoning. Using the *Hudson* test, we conclude that criminal prosecution for escape following prison disciplinary proceedings does not violate double jeopardy where prison authorities do not substantively alter the conditions of a defendant's original sentence.

■ ¶ 5 Under *Hudson*, the threshold question is one of statutory interpretation. Initially we must decide whether the Legislature intended specifically or by implication to establish a civil remedy or a criminal penalty.[4] Then, we determine whether the statutory scheme is so punitive in purpose or effect as to transform a civil remedy into a criminal penalty.[5] The *Hudson* Court outlined seven factors to use in making the latter determination: (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play on a finding of *scienter*; (4) whether its operation promotes the traditional aims of punishment (retribution and deterrence); (5) whether the behavior to which it applies is already a crime; (6) whether one may assign to it an alternative purpose other than punishment; and (7) whether it appears excessive in relation to the alternative purpose assigned.[6] These factors must be considered in light of the relevant statute, and are only relevant if we determine the Legislature intended a sanction to be civil in nature.[7]

brief pro se, and do not consider the pro se brief or its propositions of error.

2. *Phillips v. State*, 1980 OK CR 112, 622 P.2d 719, 720.

3. 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997).

4. *Hudson*, 522 U.S. at ——, 118 S.Ct. at 493; *United States v. Ward*, 448 U.S. 242, 248, 100 S.Ct. 2636, 2641–42, 65 L.Ed.2d 742 (1980). The cases alternate in their use of the terms "sanction," "punishment," and "penalty".

5. *Hudson*, 522 U.S. at ——, 118 S.Ct. at 493.

6. *Hudson*, 522 U.S. at ——, 118 S.Ct. at 493; *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168–69, 83 S.Ct. 554, 567–68, 9 L.Ed.2d 644 (1963).

7. *Hudson*, 522 U.S. at ——, 118 S.Ct. at 493; *United States v. Ursery*, 518 U.S. 267, 116 S.Ct. 2135, 2143–45, 135 L.Ed.2d 549 (1996); *Department of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767, 777–78, 114 S.Ct. 1937, 1945, 128 L.Ed.2d 767 (1994); *United States v. Halper*, 490 U.S. 435, 447–48, 109 S.Ct. 1892, 1901, 104 L.Ed.2d 487 (1989); *Kennedy*, 372 U.S. at 169, 83 S.Ct. at 568. Previous Oklahoma and U.S. Court of Appeals cases have held that criminal proceedings which occur subsequent to prison disciplinary sanctions for the same conduct do not violate double jeopardy. The law has advanced since these decisions were written, and their reasoning is now unpersuasive. The Oklahoma cases rest on law suggesting that double jeopardy only applies where a defendant is subjected to more than one criminal trial for the same offense. *Ketcher v. State*, 1988 OK CR 6, 748 P.2d 536, 538; *Green v. State*, 1987 OK CR 225, 744 P.2d 565, 567; *Caffey v. State*, 1987 OK CR 153, 739 P.2d 546, 547; *Hall v. State*, 1987 OK CR 171, 741 P.2d 880, 881; *DeRonde v. State*, 1986 OK CR 29, 715 P.2d 84. Since these cases were decided, the U.S. Supreme Court has refined the concept of double jeopardy. It is now settled that some civil sanctions may violate

■ ¶ 6 The sanctions imposed against Worthen by the prison authorities were authorized by 21 O.S.1991, 443a, which provides that escaped prisoners who have been recaptured "shall be *punishable* by the prison authorities ... provided that such *punishment* shall not be *cruel or unusual.*"[8] In determining whether the legislature intended this statute to be civil or criminal, we look first at the statute itself. The cited language indicates the legislature intended sanctions under this statute to be a form of punishment. The statute is included in the Oklahoma Penal Code, and immediately follows the provision criminalizing escape from a penal institution. The Legislature clearly intended punishment under this section to be criminal in nature. This determination ends the analysis, and we need not proceed to the second step of *Hudson* or apply the seven factors above. In *Hudson,* the sanction in question was civil in nature. *Hudson* implies that, where a statute is determined to be criminal, traditional double jeopardy analysis should apply.

■ ¶ 7 Oklahoma generally uses the same transaction test when an accused is subjected to multiple trials for the same offense and the same evidence test where a series of acts are involved and the accused is charged with several counts in a single information.[9] The Supreme Court has expanded double jeopardy to include sanctions imposed in proceedings other than criminal trials.[10] Here, after conducting a prison disciplinary proceeding, prison authorities punished Worthen under Section 443a for the act of escape by imposing 30 days of disciplinary segregation and revoking his earned credits. The State subsequently imposed an additional penalty in a criminal prosecution for the same act of escape. The issue is whether the subsequent criminal prosecution violated double jeopardy.

■ ¶ 8 The same transaction test appears appropriate here. Although there were not multiple trials, Worthen was subjected to criminal prosecution after punishment was imposed in a prison disciplinary proceeding. The disciplinary punishment was imposed pursuant to a criminal statute in which the Legislature intended to impose criminal punishment. Worthen's subsequent criminal prosecution does not violate double jeopardy because the disciplinary punishment was no more than a mere alteration of the conditions under which his sentence is being served. Prison authorities may punish Worthen for escaping by altering the conditions of his original sentence by changing his level of confinement or revoking his good-time credits.[11] Worthen's criminal prosecution for escape following disciplinary punishment does not violate double jeopardy, and this proposition is denied.

double jeopardy without successive criminal trials. *Department of Revenue of Montana v. Kurth Ranch,* 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994) (state marijuana tax); *United States v. Ursery,* 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996) (distinguishing between civil penalties and civil forfeitures); *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) (Medicare fraud). The circuit courts base their reasoning on the U.S. Supreme Court's decision in *Halper,* 490 U.S. at 441, 109 S.Ct. at 1898. *United States v. Brown,* 59 F.3d 102, 104 (9th Cir.1995); *United States v. Hernandez–Fundora,* 58 F.3d 802, 807 (2nd Cir. 1995); *United States v. Newby,* 11 F.3d 1143, 1145 (3d Cir.1993); *see also Garrity v. Fiedler,* 41 F.3d 1150, 1152–53 (7th Cir.1994) (stating *Halper* does not apply to prison disciplinary proceedings). In *Halper,* the Court focused on whether a particular sanction constituted "punishment", holding that a court should evaluate the purposes served by the sanction and determine whether it was remedial or punitive in nature. The *Hudson*

Court disavowed this reasoning, and we do not rely on these cases. *Lucero v. Gunter,* 17 F.3d 1347, 1351 (10th Cir.1994), did not involve a criminal prosecution It is distinguishable and neither its holding nor its reasoning apply here.

8. 21 O.S.1991, 443a (emphasis added).

9. *Salyer v. State,* 1988 OK CR 184, 761 P.2d 890, 893.

10. *Department of Revenue of Montana v. Kurth Ranch,* 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994) (state marijuana tax); *United States v. Ursery,* 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996) (distinguishing between civil penalties and civil forfeitures); *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) (Medicare fraud).

11. *United States v. Brown,* 59 F.3d 102, 105 (9th Cir.1995) (not relying on the discredited language in *Halper* ).

## DECISION

¶ 9 The Judgment and Sentence of the trial court is **AFFIRMED.**

STRUBHAR, V.P.J., concurs.

LUMPKIN, J., concurs in part/dissents in part.

LANE, J., concurs in results.

JOHNSON, J., specially concurs.

LUMPKIN, Judge, concurs in part/dissents in part.

¶ 1 I can concur only in the result reached in this case and must dissent to the Court's aberrant reasoning.

¶ 2 In its attempt to find a way to apply *Hudson v. United States,* 522 U.S. ——, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997), to a situation to which it does not apply the Court has attempted to fit the proverbial square peg into a round hole. In doing so, the Court becomes the first court in the history of the United States to find there are any double jeopardy implications related to prison disciplinary proceedings.

¶ 3 Upon review of applicable caselaw, I find the reasoning in this opinion inherently wrong for two reasons: (1) double jeopardy does not apply to prison disciplinary proceedings; and (2) even if *Hudson* implicates application of its holding to prison disciplinary proceedings, the opinion wrongly applies it and disregards facts of *Hudson,* i.e. the administrative proceedings by the office of the comptroller of the currency were deemed by the Court to be civil in nature, even if a fine was imposed.

¶ 4 It is recognized within the federal circuit courts that double jeopardy does not apply to prison disciplinary proceedings. *See United States v. Galan,* 82 F.3d 639 (5th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 179, 136 L.Ed.2d 119 (1996). In arriving at this consensus, the courts have determined that the "bar against double jeopardy does not preclude criminal prosecution for conduct for which prison authorities have already imposed administrative discipline". *United States v. Brown,* 59 F.3d 102, 103 (9th Cir.1995), citing to *United States v. Apker,* 419 F.2d 388 (9th Cir.1969). In discussing the *Halper* argument, which was addressed in *Hudson,* the Court in *Brown* stated:

> we conclude that these problems do not arise, because the prohibition against double jeopardy does not bar criminal prosecution for conduct that has been the subject of prison disciplinary sanctions for two independent reasons: 1) even if the sanctions were 'punishment,' they were integral parts of Brown's single punishment for armed robbery; and 2) the sanctions are not punishment for purposes of double jeopardy because they are solely remedial.

The court in *Brown* focused on the remedial nature of prison disciplinary proceedings and stated further, "in the prison context, such sanctions can still be explained solely as serving the government's remedial purpose of maintaining institutional order—they are designed to punish only insofar as such sanctions enable the government to fulfill its remedial goals". *Brown,* 59 F.3d at 105. As referenced in *Brown,* the Court in *Garrity v. Fiedler,* 41 F.3d 1150 (7th Cir.1994), *cert. denied,* 514 U.S. 1044, 115 S.Ct. 1420, 131 L.Ed.2d 303 (1995), addressed the impracticalities of prison disciplinary proceedings implicating double jeopardy concerns. The Court stated:

> Prison administrators must have the ability to discipline a prisoner for violating institutional regulations, and the State must have the ability to prosecute the prisoner for the same conduct at a later date; combining the two proceedings would not be feasible. The prison disciplinary process determines whether the defendant has violated the conditions of his incarceration and is designed to maintain institutional security and order. A criminal prosecution is designed to punish the defendant for a violation of the criminal laws.

*Id.* at 1153. *See also United States v. Newby,* 11 F.3d 1143 (3rd Cir.1993), *cert. denied,* 513 U.S. 834, 115 S.Ct. 111, 130 L.Ed.2d 58 (1994). Another insight into the reasons for this exemption from the double jeopardy clause as to prison disciplinary proceedings was set out in *United States v. Hernandez–Fundora,* 58 F.3d 802 (2nd Cir.1995), *cert. denied,* 515 U.S. 1127, 115 S.Ct. 2288, 132

L.Ed.2d 290 (1995), when the Court recognized:

> Punitive interests and remedial interests, however, are nowhere so tightly intertwined as in the prison setting, where the government's remedial interest is to maintain order and to prevent violent altercations among a population of criminals. Accordingly, the mere fact that a sanction imposed by prison officials has a punitive component does not mean that the sanction constitutes 'punishment' for double jeopardy purposes.

*Id.* at 806. The Court then held "[a]ccordingly, subsequent prosecutions will be barred only in those exceedingly rare circumstances where the disciplinary sanction imposed is grossly disproportionate to the government's interest in maintaining prison order and discipline." *Id.* at 807.

¶ 5 The Tenth Circuit Court of Appeals has dealt with the issue in a more direct fashion. *See Lucero v. Gunter,* 17 F.3d 1347, 1351 (10th Cir.1994). The Court stated:

> Prison disciplinary hearings are not part of a criminal prosecution, *Wolff v. McDonnell,* 418 U.S. 539, 556, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974), and therefore do not implicate double jeopardy concerns, *see Breed v. Jones,* 421 U.S. 519, 528, 95 S.Ct. 1779, 1785, 44 L.Ed.2d 346 (1975) (application of the double jeopardy clause is limited to proceedings which are "essentially criminal").

¶ 6 In discussing what is a criminal punishment, the Court in *Hudson* recognized the previous holding in *Wong Wing v. United States,* 163 U.S. 228, 235, 16 S.Ct. 977, 980, 41 L.Ed. 140 (1896), that quintessential criminal punishments may be imposed only "by a judicial trial". Thus, double jeopardy concerns are not applicable in this context due to the remedial nature of the prison disciplinary proceedings and the fact that the punishment which may be imposed through those proceedings is of an administrative nature and is not "imposed only by a judicial trial". The safeguards to this type of administrative punishment have been provided by the Oklahoma Legislature in 21 O.S.1991, § 443a. The Legislature has stated:

in addition, all prisoners who escape from either of the aforesaid prisons either while confined therein, or while at large as a trusty, when apprehended and returned to the prison, shall be punishable by the prison authorities in such manner as may be prescribed by the rules and regulations of the prison provided that such punishment shall not be cruel or unusual.

The "in addition" in this statute refers to the substantive criminal provisions set out in Section 443 which provides for the crime and punishment of escape from a penal institution. While due process concerns may be implicated in that process, double jeopardy concerns are not. The Legislature has unequivocally set out its intent that prisoners can both be prosecuted for the criminal act and be disciplined by prison authorities. *See e.g. Ellis v. State,* 834 P.2d 985, 990 (Okl.Cr. 1992). *See also Hale v. State,* 888 P.2d 1027, 1030 (Lumpkin, J. Concur in Results) (Okl. Cr.1995).

¶ 7 The second reason the Court's analysis is incorrect is that it fails to recognize, as did the *Hudson* court, the holding in *Wong Wing,* supra, that "quintessential criminal punishments may be imposed only 'by a judicial trial'." 118 S.Ct. at 495. The unarticulated common thread of the United States Supreme Court discussions in *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), *Department of Revenue of Montana v. Kurth Ranch,* 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994); and *United States v. Ursery,* 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), is a concern that civil sanctions may rise to the level of a criminal punishment without affording the individual against whom the sanction is applied all of the due process safeguards afforded to a criminal defendant.

¶ 8 Legislatures, both federal and state, over the years have added civil sanctions as a part of legislative enactments together with granting administrative agencies the authority to assess sanctions as a part of their regulatory authority. The plethora of these type of enactments does create concern that utilization by government entities will, in substance, amount to a criminal prosecution with a lesser burden of proof and lesser

procedural safeguards unless there is some method of checking the application of those enactments. In an effort to address that inferred underlying concern, the U.S. Supreme Court has engaged in various means of linguistic gymnastics without directly articulating the reason for the verbal contortion which had to be addressed in *Hudson*. If I am correct in my perception of this underlying problem, it drives home the fact even more strongly that *Hudson* does not apply in a prison disciplinary proceeding.

¶ 9   However, assuming for the purpose of discussion that *Hudson* in some way implicates an application to the prison disciplinary proceeding, a look at the facts in *Hudson* will itself explain why the Court's analysis in this case is inappropriate. In *Hudson*, the office of the comptroller of the currency (OCC) initiated administrative proceedings against the petitioners. As a result of those administrative proceedings, OCC entered into a consent order with each of the petitioners which would require them to pay monetary assessments and preclude them from participating in any manner in the affairs of any banking institution without the written authorization of the OCC and all other relevant regulatory agencies. The final holding in *Hudson* was "there simply is very little showing to say nothing of the 'clearest proof' required by *Ward*, that OCC money penalties and debarment sanctions are criminal. The double jeopardy clause is therefore no obstacle to their trial on the pending indictments, and it may proceed." *Id.* at 496.

¶ 10   In the context of *Hudson*, these administrative proceedings were deemed "civil". The actions were by a regulatory agency in an administrative forum. It was not, as the Court noted by its citation to *Wong Wing*, a criminal punishment imposed by a judicial trial. 118 S.Ct. at 495. If the Court applied that consistent analysis to the scenario presented in this case, even under *Hudson* we would not find an implication of the double jeopardy clause. The sanctions rendered against the Appellant in this case were rendered in an administrative disciplinary procedure. The sanctions were not imparted by a prosecution in a court of law, thereby meaning a criminal punishment imposed "by a judicial trial". The sanctions imposed were remedial in nature and have to do with the withdrawal of earned credits. The awarding of earned credits to prisoners is set out in the provisions of 57 O.S.1991, § 138. There is no doubt that these earned credits can be rescinded as a part of inmate discipline after the inmate has been afforded due process for any infraction which is the basis for removing earned credits. The issue of earned credits is directed by the statutes to be made in accordance with the rules and regulations established by the Board of Corrections. The Board of Corrections also establishes procedures for disciplinary proceedings. It in no way increases the punishment for the crime for which the sentence is being served. Therefore, the Court's attempt to in some way make the analysis in *Hudson* apply to this non-germane issue is even more unsubstantiated.

¶ 11 . The futility of this attempt to make *Hudson* apply is also found in the Court's own language. The Court begins its analysis by stating the decision in *Hudson* recently restated the "appropriate" double jeopardy analysis, however, then, the Court turns around and says *Hudson* does "not apply". Then, the Court seeks to take an analysis which may be appropriate but does not apply to prison disciplinary proceedings and use it as the analysis to arrive at its decision. This convoluted method of analysis seems to imply a justification for the Court's rush for an excuse to discuss *Hudson* rather than a reason for it.

¶ 12   I would urge the Court to reconsider its attempt to reformat this non-germane decision regarding "civil" sanctions and continue to adhere to the *stare decisis* enunciated by the federal courts regarding the application of the double jeopardy clause to prison disciplinary proceedings.

LANE, Judge, concurs in results.

¶ 1   I agree with the majority that the prosecution by the State for escape is not barred by jeopardy. However, I do so using different reasoning than that employed by the majority.

¶ 2   Like the majority, I find Appellant was punished twice for his escape. First,

when the prison authorities imposed 30 days of disciplinary segregation (thus restricting his movement and activities) and revoking his earned credits (thus requiring him to serve more time before he is released from the penitentiary). Second, he was further punished in the court criminal prosecution by being sentenced to serve another four years in the custody of the Department of Corrections. The majority contends that this is not jeopardy, because the punishment prescribed by DOC is merely an alteration of the conditions under which Appellant's sentence is being served. I do not think this is the proper approach. I would find that both sanctions are punishment and neither is remedial in nature. I would then look to *Ellis v. State*, 1992 OK CR 35, 834 P.2d 985, 991 where we found that if the Legislature explicitly authorized multiple punishment the judicial inquiry is at an end. The legislature intended multiple punishment. Section 443 defines the crime of escape from a penal institution and sets the limits of punishment for the crime, which is then followed by § 443a which states:

> In addition, all prisoners who escape from either of the aforesaid prisons either while confined therein, or while at large as a trusty, when apprehended and returned to the prison, *shall* be punishable by the prison authorities in such manner as may be prescribed by the rules and regulations of the prison provided that such punishment shall not be cruel or unusual.

(Emphasis added.)

The use of the word "shall" indicates to me that the Legislature wants the escapee prosecuted under § 443 *and* punished under § 443a. Since there is no question that the Legislature intended additional punishment, our inquiry must end.

JOHNSON, Judge, specially concurs.

¶ 1 I specially concur with the majority herein as it relates to the finding that the Legislature intended that the sanctions under 21 O.S.1991, § 443a, could be punitive in nature and therefore, in violation of the double jeopardy clause of the Oklahoma and U.S. Constitution. I therefore would disagree with the concur in part/dissent in part opinion of Judge Lumpkin that the double jeopardy clause does not apply to prison disciplinary proceedings.

¶ 2 The majority opinion and the concur in part/dissent in part (Lumpkin, J.) are both well-reasoned and have meaningful statements. I agree with the majority but noting that the punishment provisions authorized by 21 O.S.1991, § 443a, are punitive in nature, they are not "per se" double jeopardy. Prison authorities may punish the appellant for escape by altering the conditions of his original sentence or changing the level of confinement or revoking good-time credits or other administrative type matters, but they could not lengthen the time of the sentence without running afoul of the double jeopardy clause.